Good morning. May it please the Court, Judith Hagley from the Department of Justice representing the United States. You need to speak up. I'm going to move it down a bit. You can also move the console down. There's a button. Can you hear this? Thank you so much. This case is not about whether Mayo Clinic is entitled to its tax exemption under 501c3 of the Code. It is. It operates exclusively for tax-exempt purposes, multiple tax-exempt purposes. This case is about whether Mayo can also claim an additional tax benefit, whether it can avoid the tax on its unrelated business income from debt, finance, real estate investment, and that's a tax . . . There we have, to me, an interesting place to start, the first word of the tax in question, unrelated. Your brief concedes that the medical and educational purposes of Mayo Clinic are intertwined. Yes. Well, the word unrelated in the unrelated business income tax relates to the real estate investment. The real estate investment and the income from that, the debt finance income from that, is unrelated to Mayo's tax-exempt operations, and that's why it's subject to a tax. The tax exception in this case under . . . All right. I mean, that's just . . . that's a non-answer. Well, let me try and answer that. What is the . . . what revenues are unrelated in that they don't have . . . they aren't from real estate transactions or revenues that are unrelated to the medical and the intertwined medical educational purposes of the overall operation of the activities of the clinic? That, to me, is the underlying substantial question here. The underlying question here is whether Mayo is an exclusively educational organization within the meaning of 170B1A2, and in the prior appeal, this Court said that the Better Business Bureau test applied to that question, and under that test, if Mayo operates for a purpose other than education that is substantial, it does not qualify. And the District Court erred in applying that test because it held that Mayo was an educational organization even though it operated for other purposes that were substantial. Its patient care purpose was substantial. The Court said, as a legal matter, it's not dispositive whether Mayo has other purposes, even if they're substantial, and that conflicts with the Better Business Bureau test in cases applying the Better Business Bureau test. In Better Business Bureau, an organization that operated for multiple purposes, including, as it alleged, educational purposes, did not qualify as an educational organization because one of its purposes was other than that of education and it was substantial. Under the test, the issue is not whether Mayo's clinical practice serves... Now, you know, you're resting all your laurels on an 80-year-old decision on a broad question that has had a great deal of evolution. It's a foundational 80-year-old decision that... No, Foundations was about 1895. I have a question whether your legal team, whether it's that you didn't understand our first decision or you simply didn't like it. We did like your first decision, Your Honor, and we believe that we've been applying it. The Court said... Yeah, there was no petition for re-hearing on the bank, right? No, we didn't. We accepted the Court's opinion. It was mainly favorable to the government. And the Court said in that opinion that it must be determined whether Mayo's overall purpose and operations establish that it's organized and operated exclusively for educational rather than other purposes. And that's the test that the government seeks to apply here. The fact that Mayo's education and medical activities are integrated doesn't immunize Mayo from the Better Business Bureau analysis endorsed by this Court. A single activity can have a dual purpose. And if one of those purposes is disqualifying, then the organization doesn't satisfy the test. This was the case in Living Faith, the Seventh Circuit decision that we cite, in Redlands. In each of those cases, an organization engaged in one activity, it served a dual purpose and one of the purposes was substantial and disqualifying and not exempt. Just because Mayo's medical and educational purposes are inextricably intertwined in the related activities doesn't mean that those are not distinct purposes. I was just looking back and we did not bless the Better Business Bureau test. We cited it as one of the Supreme Court decisions that reflect the consensus that all of the property is in use and accept as the incidental matters wholly devoted to present legitimate purposes of the educational institution. And that's the analysis the District Court applied. And you say he departed from the Better Business Bureau test, which we endorsed and we did not. Well, it's a test that's been followed by other cases. It's reflected. But this was law of the case and the District Court applied it. Your brief says he didn't. Or no, actually your brief basically says our law of the case was dicta. I hope that's not what we meant to say, but the District Court erred in concluding that its analysis ended once it determined that Mayo's clinical practice served an educational purpose. That's not the end of the analysis. You also have to determine whether that same activity also served a substantial purpose other than education, which the Court found. And Mayo doesn't dispute on page 27 of its brief. It acknowledges that it engaged in, you know, its activities served a medical purpose that was substantial. What Mayo claims is that it's a hybrid organization that engages in activities for both a substantial medical purpose and a substantial educational purpose and that Romanet 2 of 170BA1 covers such an organization and it does not. Romanet 2 isolates organizations that are exclusively educational. Now, hybrid organizations engaging in substantial medical purpose and substantial educational purpose are described in Romanet 3 of 170BA1. But Congress explicitly declined to extend the tax exception issue here to Romanet 3, you know, medical organization, medical education organizations. Congress knows how to extend the tax benefit to both. Extended in the code, we cite section 119D, which provides a tax benefit for Here they use the language that they've been using for more than 100 years, exclusively. Exclusively, which has been interpreted to mean primarily as well as excluding Except for the 1958 regs. I'm sorry. Which departed from prior regulations. Our argument is consistent with the 1958 regs. Yes. And as we pointed out, they departed from prior agency interpretation. With regard to formal instruction, what the Court said in the prior opinion is that the regulations have a role to play to the extent that they reflect how the case law has developed, has interpreted the statute. And that to the extent that the regulations have the primary function test and the merely incidental test, that that was consistent with the case law and the regs were valid to that extent. What the Court struck down was the requirement in the regs that the education be provided as formal instruction. The Treasury had that language in there because it thought it reflected the statutory language requiring the regular faculty and curriculum and students. Be that as the case, we struck down that part of the regulation. We have not questioned that in this case. We don't even question the district court's finding that Mayo operated for a substantial educational purpose. How educational has been defined by this court. What we're saying is we're relying on the court's other finding that it also operated for substantial medical purpose and that is disqualifying. That precludes Mayo from being an exclusively educational organization within the meaning of the statute. Counsel, when this court, in the last case, what it instructed the district court to do was to separate the wheat from the chaff. Correct. And it seems to me what happened is that the district court said there is no chaff. Everything is wheat. And why can't they do that? Because what the court said is that if you have an activity like clinical practice and it supports an educational purpose, then it's exclusively educational. And that's just incorrect because it also supports a medical purpose. I mean, think of the flip side, that clinical practice supports a medical purpose. Everybody agrees to that. That doesn't make that clinical practice exclusively medical. We know that it also supports an educational purpose. The difficulty is drawing the line, it seems to me, because at a high enough level of generality, everything could be educational. So where to draw the line is problematic. I agree with you. It can be confusing and problematic. But in this case, it doesn't matter that Mayo's clinical practice served an educational purpose. It's the fact that it served a separate, distinct purpose. You know, Mayo didn't just educate 3,500 students at its schools. It served annually a million patients. They were quite important to Mayo. I mean, that's a great thing about Mayo. It serves this important medical purpose. And because it does that, you know, it's a hybrid organization, to use, you know, Mayo's language. It is not an exclusively educational organization described in Romanet II. It may be that it's a... But exclusively doesn't necessarily mean exclusively. Correct. Correct. It means primarily educational without any non-educational purposes that are substantial. And here we think Mayo fails on two grounds. The one I've been talking about is the second, that it has a substantial medical purpose. But also we think that the district court erred in interpreting primary, because it is required to be its primary purpose to be education, interpreting that to be merely substantial. Counsel, one thing I was surprised at is that the parties, I don't believe in either brief, discussed the Supreme Court's canons of construction for federal statutes granting tax exemptions. And the Supreme Court has said, including in Chickasaw Nation, that if any exemptions are to be granted, they must be clearly expressed. Does that come into play here at all? We did cite the cans about tax exemptions being a matter of legislative grace and need to be narrowly construed. We cited that in the first appeal. We have not cited that here. We didn't think we need to. But it is yet another reason for not broadly extending Romanet II, which is to be limited to exclusively educational organizations, to sweep in an entire industry of academic medical centers into this exception. Congress could have extended the tax exception at issue to academic medical centers described in Romanet III. It's done that in Section 119D. It's done that elsewhere in the code. It chose here to just limit this exception to four organizations, two retirement accounts, title-holding companies, and exclusively educational organizations that regularly maintain faculty curriculum for enrolled students. I've addressed in our brief why we think the district court erred with regard to its interpretation of primary being merely substantial. That really is a sea change to how primary in the tax-exempt context has been interpreted. It's always been interpreted to be the predominant purpose, and that's consistent with the ordinary meaning of the word primary. In relation to that, something that I think is maybe significant, the Brundage case by the tax court in 1970 after the 58 rigs. Page 11 of your brief, you say, this regulatory definition was later upheld by the tax court, see Brundage. That's a misinterpretation. In May 01, if I can call our prior case, rejecting the commissioner's position the tax court held at a museum operated by the city of San Francisco and open to the general public, while not used primarily for formal instruction, was in operation an integral part of and valuable adjunct to the San Francisco school system. And then we add the commissioner acquiesced in the result. What the tax court did in Brundage is at first the gift was to the museum, and the court first said the museum itself is not an educational organization within the meaning of the reg. And it upheld the reg as valid. But then it went on to say that the museum is an integral part of the larger school system, and the larger school system is an educational organization within the meaning of the reg. And allowed. Here May meets both parts. In Brundage, there was no question that either the museum or the school system was operating for substantial purpose other than education. Here Mayo fails because it is operating, undisputed operating for substantial medical purpose. And it's not operating predominantly. It was getting revenues from people who visited the museum, right? I assume, I don't know if there was a charge. Yeah, it may have been. I'm from D.C. Museums are free. Otherwise there wouldn't have been something to tax. Right, right. Well, it was getting donations. Well, I think your position is contrary to Brundage. I don't see why. It seems to me Mayo has carefully structured itself over the years, aware of this purpose for over 100 years to satisfy the Brundage resolution of the issue in that case. And we think Brundage doesn't help Mayo here because neither the museum nor the school system was operating for a purpose other than education that was substantial. Thank you. Well, you can say that a museum is educational. I sign on to that. But it wasn't an educational organization, a museum. You go to a museum and you're incidentally educated, but you go for a lot of different reasons other than go to school. Correct. And that's why the tax court found that the museum itself was not a 170B1A2 organization. It was the larger school system. Thank you very much. Ms. Henning. Good morning, Your Honors. May it please the Court. After a five-day bench trial and after writing nearly 100 pages of detailed factual findings and conclusions of law, the district court exhaustively laid out why it believed Mayo met the two-part test for exclusively educational organization under Section 170B1A Romanet 2. If you don't mind for the rest of the argument, I'm going to refer to Romanet 2 or Romanet 3 as appropriate instead of reciting that whole thing. And it did so as this court instructed it to do in its 2021 opinion in this matter. The government doesn't even attempt to challenge those findings as clear error. And that's not surprising because they're correct and they echo the opinion of multiple other courts that have examined Mayo's practices with respect to clinical education. The fact is that those fact findings are devastating to the government's position here. The court found, for example, that education has been an integral part of the Mayo Clinic from its earliest days. It found students are taught in classrooms and basically anywhere that there's patient care, which includes the patient's bedside, outpatient clinics, operating rooms, clinical wards, or even hallways. Thus, education occurs almost everywhere at Mayo. Mayo's medical school is consistently ranked in the top 20 in the country. It's invested substantially in the growth of its schools. Facilities are predominantly used for educational purposes and medical treatment and research at Mayo nearly always serves an educational purpose, even when involving students renders healthcare more expensive. As such, the court concluded, education is at the heart of what Mayo does every day. Those findings have not been challenged for clear error. On the basis of these and other factual findings, the court determined that education was Mayo's primary purpose, whether or not primary is defined to mean substantial or most important. It then went on to analyze in detail whether Mayo had any substantial non-educational functions. And as the court instructed it to do on remand, it separated the wheat from the chaff. And I agree with you, Judge, that his conclusion was that he found only wheat. And he found that things that the government is now claiming are non-educational, i.e., medical care or patient care, depending on how it's phrased, were, in fact, educational. They were not non-educational. And so the second part of the test was also met. So, again, if you want to look at education at a high enough level of generality, isn't everything educational? So where is the line going to be drawn? So I would draw the line the way the regulation that this court said in the last appeal was the proper frame of reference for this dispute, which is the regulation defining 501C3 educational organizations. It's 26 CFR 1.501C3-1D. It defines educational in D3. It says educational defined. In general, the term educational relates to the instruction or training of the individual for the purpose of improving or developing his capabilities. That's what clinical education does at Mayo. Or the instruction of the public on subjects useful to the individual and beneficial to the community. That's what the research does at Mayo. That is one thing that I think, you know, we probably didn't emphasize enough in our brief. We said it, but we probably should have said it louder, which is the court found that research, which is one of the three functions of Mayo that the government points out, patient care, education, and research as the three substantial functions. And that serves educational purposes. It serves it both as part of clinical instruction and as part of educating the public because the purpose of that research is to publish the fifth largest medical journal in the world, as the court found, as a matter of fact. And so, again, those findings are not challenged for clear error. So the substantial versus most important, even under the government's theory, two-thirds of Mayo's activities are definitely educational. We would argue that three-thirds are educational because the term is educational. It is not education. So you can't – it's relating to the instruction or training of an individual or the instruction of the public. I'm not sure it's as simple as you make it out because the question is whether or not it's organized and operated exclusively for educational purposes, right? If someone is a patient at one of Mayo's hospitals for four days, and during that four days an intern accompanies the physician for five minutes, does that make the whole four days educational rather than medical? Sorry, Your Honor, I didn't mean to cut you off. Those are exactly the kind of factual issues that the district court – that's why this matter was remanded, because you're hypothetical. There might be more of a problem here. But the fact of the matter is there's not a problem here because the district court found as fact – again, not challenged, it's clear error – that clinical practice almost always involves a student at Mayo, every aspect of clinical practice. So the situation you're describing has been found as fact, not to be the situation we're evaluating here. But that is the factual inquiry, is, you know, are there non-educational purposes? So if you could argue that there was some aspect of clinical practice that was both substantial and non-educational, meaning unrelated to education, we would have a very different case. But that is not our case. What the district court found as fact is that clinical practice at Mayo is educational. It relates to education. And to the extent it doesn't, it's merely incidental because the court found as fact that there are no substantial functions that don't serve education. I understand why you're arguing for a clear error standard and emphasizing the facts, but isn't the determination of how and when to draw the line a question of law? They're an application of law to fact, I would say. And actually, this court said it. I don't have to say it. This court's Mayo 1 opinion, if we're going to call it that, the 2021 opinion, said that determining whether something is an educational organization is a mixed question of law and fact. So you cannot sort of back away from the facts. It's a mixed question of law and fact. So you have to accept all of the facts as found before applying them to the law. The other two other things that I'd like to emphasize that might be getting a little bit lost in the briefing, one is that the Better Business Bureau case. I just want to emphasize that if you read the Better Business Bureau case, what the court actually found was that education was incidental. The court found that it's on page 284 of that opinion. It said that efforts to cleanse the business system of dishonest practices are highly commendable and may even serve incidentally to educate certain persons, but they are directed fundamentally to end other than that of education. I read that as, although Better Business Bureau has developed, as Judge Loken pointed out, it was the beginning stages of sort of the two-part test that this court laid out in Mayo 1, and I read it as failing the first prong. It's saying you're not a primarily educational organization. You are primarily a trade association that has some incidental educational benefits, and so you fail the test. Again, the district court's factual findings rule out that possibility here because the court has found that the education is profuse throughout Mayo and highly integrated into all of Mayo's activities. The second thing is that Better Business Bureau never says all other purposes that don't have the word education. Again, it says non-educational purposes. Educational is defined in the regulations, and examples in the regulation of educational organizations, the very one that I was just quoting from that this court said is the relevant frame of reference, include museums, zoos, planetariums, symphony orchestras, and other similar organizations. So it is very clear from the regulation itself that educational, again, the word being defined at the beginning of that regulation is educational defined, is not just education. It is broader than that, and this court emphasized in its Mayo 1 opinion the broad definition of educational historically and in the statute. Counsel, if we conclude that the plain meaning of the term primary precludes an interpretation that it means substantial, does your position survive? Absolutely, because the court found as fact that it is the most important purpose as well as a substantial purpose, and it said it did so for the exact same reasons that it found substantial purpose, which would mean how highly integrated it is into all of the activities. The historical, you know, this was founded as an educational organization, goes through the bylaws, goes through, you know, again, it's a 100-page, very thorough opinion that very thoroughly lays out all of the reasons why it believes. And then I will add to that that by nature, if both research and education are educational as defined in the regulation, educational is necessarily the most important. Would you agree that the word primary and the word substantial are very different? I don't agree with that, actually, because Agnew said, I agree that they're not the same word, but Agnew says that you can interpret, and that's the Supreme Court, says you can interpret primary to mean substantial logically, and that it does sometimes mean that. And I think this is the kind of situation where that occurs for a variety of reasons, including that it's not, we call it binary in our brief, the district court calls it binary, maybe mutually exclusive is a better word. So in Millat, there was a mutually exclusive decision facing the court. Either the revenues were day-to-day operations revenues, or they were accruing over a long period of time. You can't be both day-to-day and accruing, so it makes sense that one has to triumph over the other, right? You can't have both. The same can be seen in, for example, a lot of the cases, deciding whether something is an exempt organization. Is it commercial, or is it charitable? Because you can't be both, generally. There are rare exceptions to that, but generally you can't be both. And so they're deciding, are you one or the other? In those circumstances, it might make sense to say one has to be elevated above the other. Here, patient care and education are not mutually exclusive, and the court expressly found that. Not only are they not mutually exclusive, clinical education cannot exist without patient care. Patient care is essential to clinical education, which brings me to kind of a final point, which is the necessary implication of the government's position, is that medical education and clinical education will never qualify as educational organizations, because essentially they're saying, sure, you can provide clinical practice as long as you don't substantially care about patient care. I mean, excuse me? Please, tell the patients that, if that's the situation. You won't be a going concern for very long. And not only that, you won't be providing a very good clinical education, because of course what the educators are trying to impart to these medical professionals that they are training is an extremely high standard of care for patients. Let's take that to its logical conclusion. If we accept that patient care serves an educational purpose when performed at an academic medical center, is there any limitation on such an entity qualifying as an educational organization under this statute?  And the limit is non-educational. So patient care can be educational. It isn't necessarily educational. And that's where the limit is, and that's where the fact-intensive inquiry that this court remanded for the district court to do comes in. So Mayo is on the educational end of the spectrum. One can easily imagine an academic medical center that is on the non-educational end of the spectrum, where they happen to have two residents in a 5,000-person hospital that run around and do some clinical work sometimes. That one on the other end of the spectrum is going to have some problems. Mayo, because it is on the educational end of the spectrum, as found by the district court again in an exhaustive opinion after five days of hearing testimony at a bench trial, is on the educational end of the spectrum. And it turns out that Mayo's activities, because of its history, because of the unique organization that it is, are uniquely educational. If the court has no further questions, I'm happy to surrender the rest of my time. Thank you, Your Honors. You're out of time, but it's an important case. I'll give you two minutes for rebuttal. Thank you so much. I hope I wasn't pounding you. Well, I took some of your, probably two minutes of your time before. A couple quick points, then, and thank you so much for the extra few minutes. Just to follow up, medical education is special. It does require clinical care for the most part, and that's why Congress recognizes that in describing such organizations in Romanet III, not Romanet II. If the medical school had been separately incorporated, the medical school itself could have qualified as a Romanet II, but here, Mayo organizes operations differently. Getting to your question, Judge Graz, about if primary is interpreted as predominant, it's rather the substantial, what does that do for the case? And I think in that situation, the fact that the district court found in a footnote at the end of its opinion, that it would have determined that education was predominant for the reasons stated in the court's opinion. If you look at the facts that the court found, it never found that education was more important than patient care. What it did was it credited the testimony of the CEO, Dr. Noseworthy, who said, you know, no one purpose is more important than the other. They're all integrated. None is more important than the other. So at a minimum, you would need a remand, but I think that Mayo failed to meet its case to show that education was the predominant. And finally, with regard to, you know, Mayo emphasizes that all of its patient care activities serve an educational purpose. Again, we don't think that that's the end of the matter. In Better Business Bureau, the court addressed a plaintiff that said all of its activities were educational, and the court said we don't have to address the correctness of that claim because those same activities also serve a purpose other than education. Thank you so much. Thank you, counsel. It is an important and difficult case, and it's been well briefed, and arguments have been helpful. So we will take our advisement and, again, try to do our best.